Dorothea E. Donaldson, J.
This is a claim for damages to personal property and loss of income allegedly caused by the negligence of the State in the maintenance of a structure in which the claimant was a tenant. The claim alleged that the State failed to supply heat and hot water to the premises which it had appropriated and that during a severe cold period the water pipes froze and burst damaging some of the claimant’s personal property and prevented his active practice of dentistry.
Dr. Schneider, a dentist, had his offices for many years in a building known as 163 West 125th Street, also known as 2105 Seventh Avenue, New York, New York. On April 4, 1967, the structure was appropriated for the construction of a State office building in Harlem. At that time, he was notified of the appropriation and advised that he could occupy the premises until the building was demolished. Clarence Schneider remained in his offices, continued his dental practice, and paid the same monthly rent to the Freedom National Bank of New York, the State’s collection agent. On October 20, 1967, pursuant to subdivision 12 of section 30 of the Highway Law, the claimant was served with a 60-day notice to quit, which provided that he had until the 31st day of December 1967 to vacate the premises. Upon Dr. Schneider’s failure to vacate the premises on December 31, the State commenced action in the Civil Court of the City of New York to remove him as a holdover. On January 23,1968, claimant was granted a stay until the end of February 1968, and did so vacate his offices on February 28, 1968. During January and February, Dr. Schneider paid no rent for his occupation of the premises.
*805 The notice of intention to file a claim was filed on April 4, 1968; the claim was filed on August 27, 1968 with the Clerk of the Court of Claims and with the Attorney-General; and, subsequently, upon the granting of motion for an order for leave to serve an amended claim, the amended claim was filed with the Court of Claims on October 1, 1970.
At trial, the court granted the State’s motion to dismiss that portion of the claim relating to damages for the period prior to January 6, 1968, on the ground that subdivision 3 of section 10 of the Court of Claims Act established the statutory period prior to the April 4, 1968 filing of the notice of intention to file claim.
Claimant testified that in December, 1967 on six separate days he was not serviced with heat or hot water due to the breakdown of the building’s heating system and that the State attempted to and did correct the malfunction at that time; that on or about January 5, 1968, the heating system again malfunctioned so that from January 6 through 11 of 1968 there was again no heat or hot water in the claimant’s offices; that during that period, in combination with the outdoor severe cold temperature, the water in the pipes in the sprinkler system on the structure’s upper floor froze, causing the pipes to burst, so that his offices were flooded and his furniture and dental equipment were severely damaged; he was unable to conduct his practice of dentistry for several weeks; that the 'State’s attempts to correct the condition on January 8 and 9 were unsuccessful because the service people failed to appear and on January 9 the water system of the building was turned off.
The State contended that, when title to the property vested in the State of New York, the landlord-tenant relationship ceased to exist and there was no longer a landlord; that when a tenant continues to remain on the premises subsequent to an appropriation, it is considered an occupant therein subject to removal by the Superintendent of Public Works; that an occupant in a State-owned building is treated similarly to a tenant holding over after the expiration of his term without permission of the landlord; and that, therefore, it is not liable for damages sustained by the tenant occupant during his holdover term subsequent to the termination date of the 60-day notice to quit.
The claimant maintained that a landlord-ten ant relationship does, in fact, exist, evidenced 'by the written occupancy agreement submitted by an employee of the State in its petition before the Civil Court of the City of New York, as follows: “ that the *806 State was the owner and landlord of said premises and that a written occupancy agreement had been made on April 4, 1967 between respondent and the landlord for the term of month-to-month ”; that the action before the Civil Court which was settled on January 23, 1968 by the State permitting Dr. Schneider to remain on the premises until March 1, 1968 at which time the claimant agreed to vacate the building; and that he was effectively and constructively evicted from and unable to use the premises as a result of the occurrences of January 6 through 11,1968.
The court believes, and so finds, that the relationship of landlord-tenant did, in fact, exist between the claimant and the State of New York (Highway Law, § 30; Beal Property Law, § 232-e).
Commensurate with the existence of the landlord-tenant relationship is the landlord’s duty to furnish heat and hot water to tenants and to exercise reasonable care and foreseeable discretion to prevent failure to perform. The State had actual knowledge of the defective and inoperable condition of the heating and hot water systems and negligently failed to correct the conditions after due notice. A State representative testified that attempts were made to direct the service company to repair the oil burner as they had done in the previous December and that he was unable to successfully effect the prompt servicing of the heat and water systems. The fact that the service company did not arrive in time does not relieve the State of basic responsibility for the adequate maintenance and of liability for negligent maintenance.
Dr. Schneider claimed damages to his dental-equipment, records, X rays, supplies, and office furnishings which became water-soaked, warped, rusted, frozen and damaged beyond repair, and a loss of income from his dental practice occasioned by the damage to his equipment which created a partial interruption of his business, with a loss of prospective patients and fees. He contended that proof of the loss of trade of particular patients need not be presented but only of some reasonable basis for the computation of prospective income.
The State maintained that damages which are unascertainable, contingent, or speculative, or which are remote and cannot be directly traced, or which are not reasonably capable of computation, are not recoverable whether the action is for breach of contract, negligence or other tortious wrongs; that the claimant failed to produce any list of appointments for the period in question and did not directly show the loss of income as a consequence of the suspension and interruption of his practice; that most of claimant’s practice consisted of people living in the area who walked in from the street and that this clientele *807 was aware of the eventual moving of the practice and the tearing down of the building, and that there is no proof to show the actual amount of income lost.
Dr. Schneider produced no billing records, monthly statements or appointment books to reflect the business activity or income at the end of the year but relied upon his copies of 1967 and 1968 Federal income tax returns. These income tax returns reflect a net income of $33,445 for 1967 and $21,000 for 1968. Claimant alleges a total loss of income for the weeks of January 8 and 15 and partial loss of income for 12 weeks thereafter.
The court believes, and so finds, that the claimant is entitled to an amount in damages representing a total loss of income for the period of January 8 through 20 and a partial loss of income from January 22 through February 28. The court finds the damages to be $6,150.
Claimant presented no proof to support the value of the alleged damaged items or of their actual condition at the time of the damage.
Therefore, the claimant is awarded the sum of $6,150.
Either party may submit findings of fact and conclusions of law and they will be marked and signed by the court if received within 10 days from the date of receipt hereof; otherwise, they shall be deemed waived.
Motions made by the parties, upon which decision was reserved, not hereinbefore ruled upon, are now denied.